

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00212-CR

KEVIN SIMMONS,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 13th District Court
Navarro County, Texas
Trial Court No. 31924-CR

## MEMORANDUM  OPINION

Appellant, Kevin Alan Simmons, appeals from his conviction for unlawful possession of a controlled substance over four grams but less than 200 grams with intent to deliver, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2010). In four issues, Simmons argues that: (1) the evidence is insufficient to support his conviction; (2) the trial court erred in denying his request for an instruction on a lesser-included offense; (3) the trial court erred in denying his

motion to suppress; and (4) the trial court erred in overruling his objection to the State's closing argument. We affirm.

## I. BACKGROUND

At approximately 8:30 p.m. on February 25, 2008, Corsicana Police Department Sergeant Paul Jock observed a maroon, four-door Honda sedan roll through a stop sign in Navarro County, Texas. Sergeant Jock activated the overhead lights on his police cruiser and subsequently stopped the vehicle. Sergeant Jock made contact with the driver of the vehicle, Simmons. When he approached the driver's-side window, Sergeant Jock smelled burnt marihuana. Simmons testified that he and his passenger, William Henry, were smoking a joint at the time of the alleged traffic violation and that he threw the joint out of the window just prior to being stopped by Sergeant Jock. Because he smelled burnt marihuana emanating from the vehicle, Sergeant Jock ordered Simmons and Henry to exit the vehicle so that the vehicle could be searched. However, prior to searching the vehicle, Sergeant Jock patted down Simmons and Henry and called for backup. No weapons or drug paraphernalia was found on either Simmons's or Henry's person. When Officer Scott Tidwell arrived at the scene, Sergeant Jock searched Simmons's vehicle. In the front passenger-side floorboard, Sergeant Jock found a Doritos bag that had a rubber band around the top. Inside the Doritos bag was a plastic bag which contained a white, powdery substance that Sergeant Jock believed to be cocaine. Sergeant Jock field-tested the substance and determined that the weight of the substance, including the packaging, was approximately seven grams. Simmons

claimed ownership of the cocaine and later gave a written statement confirming that fact.

Simmons was charged by indictment with unlawful possession of a controlled substance over four grams but under 200 grams with intent to deliver. *See id.* § 481.112(a), (d). Prior to trial, Simmons orally moved to suppress evidence obtained as a result of the traffic stop. In particular, Simmons argued that there was no probable cause for the traffic stop and that Sergeant Jock failed to properly warn Simmons prior to taking his written statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005). The trial court denied Simmons's motion to suppress, and the jury trial in this matter commenced. At the conclusion of the evidence, the jury found Simmons guilty of the charged offense and assessed punishment at twenty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. The trial court certified Simmons's right to appeal, and this appeal followed.

## II. MOTION TO SUPPRESS

In his third issue, Simmons asserts that the trial court erred in denying his motion to suppress the written statement he made to police. In particular, Simmons argues that the written statement he made to police was not voluntary because it was obtained as a result of a threat or promise to not arrest the other passenger in the car— Henry.

Prior to trial and outside the presence of the jury, Simmons orally moved to suppress evidence obtained as a result of the traffic stop. Both Simmons and the arresting officer, Sergeant Jock, testified at the hearing on Simmons's oral motion to

suppress. At the conclusion of the testimony, Simmons argued that the complained-of evidence should be suppressed because the evidence did not demonstrate that: (1) a traffic violation occurred, which amounted to an invalid traffic stop; and (2) Sergeant Jock read Simmons the required warnings enumerated in article 38.22 of the code of criminal procedure prior to taking his written statement. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22.

Simmons did not argue in the trial court that his written statement was involuntary because it was obtained as a result of Sergeant Jock's alleged threat or promise to arrest Henry. Thus, Simmons's complaint on appeal does not comport with his objection in the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (stating that a complaining party must make a timely and specific objection to preserve error for appellate review); *see also Wright v. State*, 154 S.W.3d 235, 241 (Tex. App.—Texarkana 2005, pet. ref'd) (noting that points of error on appeal must correspond or comport with objections and arguments made at trial) (citing *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App. 1998))). "Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review." *Wright*, 154 S.W.3d at 241; *see Ibarra v. State*, 11 S.W.3d 189, 197 (Tex. Crim. App. 1999). Accordingly, we overrule Simmons's third issue.

### III. SUFFICIENCY OF THE EVIDENCE

In his first issue, Simmons argues that the evidence supporting his conviction is insufficient. We disagree.

### A. Applicable Law

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically-correct jury charge, the State was required to prove beyond a reasonable doubt that Simmons: (1) knowingly (2) possessed, (3) with intent to deliver, (4) four grams or more but less than 200 grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d).

In satisfying its burden of proof, the State was required to prove beyond a reasonable doubt that Simmons exercised actual care, custody, control, or management over the cocaine and knew the material possessed was contraband. *See Taylor v. State*, 106 S.W.3d 827, 830 (Tex. App.—Dallas 2003, no pet.). The State was also required to prove beyond a reasonable doubt that Simmons possessed the cocaine with intent to deliver. *Id.* Intent to deliver may be established by expert testimony, such as testimony from experienced law enforcement, and circumstantial evidence, such as evidence of an accused's possession of the contraband. *See Moreno v. State*, 195 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Patterson v. State*, 138 S.W.3d 643, 650 (Tex. App.—Dallas 2004, no pet.) (stating that "intent to deliver" can be proved by circumstantial evidence, such as the quantity of drugs possessed, the manner of packaging, and the presence of the accused on the premises); *see also Terrell v. State*, No. 10-11-00022-CR, 2011 Tex. App. LEXIS 5605, at *7 (Tex. App.—Waco July 20, 2011, pet. ref'd) (mem. op., not designated for publication). Further, intent to deliver is a fact question for the trier of fact to resolve, and it may be inferred from the acts, words, or conduct of the accused. *See Taylor*, 106 S.W.3d at 831.

**B.     Discussion**

Here, Simmons admitted that the cocaine was his.   Moreover, Sergeant Jock testified that he field-tested the cocaine seized from Simmons's vehicle and that the cocaine, including the packaging, weighed approximately seven grams.   Starla Copeland, a forensic scientist with the Texas Department of Public Safety ("DPS") Crime Laboratory in Waco, Texas, noted that the cocaine seized by Sergeant Jock was sent to her crime laboratory and that Kerry O'Brick conducted several tests on the substance.   O'Brick is no longer an employee at the crime lab; instead, Copeland testified about the testing of the cocaine while relying on O'Brick's notes.   As a result of the testing, it was determined that the substance was 6.33 grams of cocaine.   O'Brick's notes allegedly contained a notation that "a plastic bag, plastic packaging, Dorito's [sic] bag, then a plastic bag, and then it would be the rock substance" were received from Sergeant Jock.   Copeland specifically stated that it was against the policy of DPS to include the packaging when weighing the substance, though she admitted that she did not have personal knowledge whether O'Brick included the packaging when weighing the substance.

Despite Sergeant Jock's testimony that the cocaine and the packaging weighed approximately seven grams and Copeland's testimony that the cocaine itself weighed 6.33 grams, Simmons argues that the evidence is insufficient to establish that the cocaine weighed more than four grams.   In making this assertion, Simmons speculates that O'Brick may have included the packaging when weighing the cocaine and that the cocaine could have possibly weighed less than four grams.   We do not find any

evidence in the record to support Simmons's speculations. Copeland clearly testified that it was against DPS policy to include the packaging when weighing the cocaine and that the cocaine weighed 6.33 grams. Furthermore, Sergeant Jock stated that the cocaine and the packaging weighed approximately seven grams together. The testimony of Sergeant Jock and Copeland undermines Simmons's assertion that the cocaine could have weighed less than four grams. Nevertheless, to the extent that there is a conflict in the testimony, we must presume that the jury resolved the conflicts in favor of its verdict and therefore defer to that determination. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93.

Simmons also asserts that the evidence is insufficient to demonstrate that he had intent to deliver the cocaine found in the vehicle. Elmer Tanner, a Captain with the Criminal Investigation Division, including narcotics, for the Navarro County Sheriff's Department, testified as an expert witness regarding narcotics investigations and possession-with-intent-to-deliver cases in Navarro County. Captain Tanner stated that, based on the amount alone and his thirteen years of narcotics enforcement, 6.33 grams of cocaine would be a dealer amount in Navarro County. Captain Tanner further noted that the plastic bag seized from Simmons's vehicle contained several different sizes of cocaine rocks, which led him to believe that the bigger rocks were going to be cut and sold in smaller quantities. Captain Tanner opined that the amount possessed by Simmons was "not something that somebody is just going to possess for their own personal use" and that Simmons likely intended to deliver the cocaine.

Simmons called his own expert witness—Coy West—on the issue of whether the amount of cocaine seized from Simmons's vehicle indicated an intent to deliver. West, now employed by SynTech Forensic Consultants, previously served as Chief Deputy of the Hill County Sheriff's Department and testified that it was his responsibility to supervise narcotics detectives for approximately nine years. Based on his brief examination of the case file, West disagreed with Captain Tanner's conclusion that the amount of cocaine seized indicated an intent to deliver. West pointed out that police did not obtain any other evidence indicating an intent to deliver, including, among other things, ledgers, scales, money, and cutting instruments. Based on his review of the evidence, West believed that Simmons was not guilty of the charged offense, a first-degree felony; instead, West noted that Simmons was guilty of a second-degree felony, unlawful possession of a controlled substance greater than four grams but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), (d), 481.115(d) (West 2010).

As noted earlier, it is within the province of the jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of those conflicts. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on evaluation of credibility and demeanor, which the jury is in a better position to judge."). In convicting Simmons of the charged offense, the jury clearly believed Captain Tanner's testimony and did not believe West's assessment of

the situation; as such, we must defer to the jury's resolution of the conflict in the evidence. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706; *Render*, 316 S.W.3d at 859.

Based on Captain Tanner's testimony and the testimony that the cocaine weighed 6.33 grams, and because "intent to deliver" can be established by circumstantial evidence of, among other things, the quantity of drugs possessed, we conclude that a rational juror could have concluded that the State proved beyond a reasonable doubt that Simmons unlawfully possessed more than four grams but less than 200 grams of cocaine with an intent to deliver. *See* TEX. HEALTH & SAFETY CODE ANN. 481.112(a), (d); *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We therefore hold that the evidence is sufficient to support Simmons's conviction. *See Lucio*, 351 S.W.3d at 894; *see also Hooper*, 214 S.W.3d at 13. Accordingly, we overrule his first issue.

## IV. LESSER-INCLUDED-OFFENSE INSTRUCTION

In his second issue, Simmons alleges that the trial court erred in refusing to give an instruction on the lesser-included offense of possession of a controlled substance over one gram but less than four grams because the evidence adduced at trial demonstrated that the amount of the cocaine seized may have been less than four grams.

## A. Applicable Law

An offense qualifies as a lesser-included offense of the charged offense if: (1) it is established by proof of the same or less than all the facts required to establish the

commission of the offense charged; (2) it differs from the offense charged only in that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish the commission of the offense; (3) it differs from the offense charged only in that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006). To determine whether a defendant is entitled to an instruction on a lesser-included offense, the court conducts a two-pronged test. *See Ex parte Watson*, 306 S.W.3d 259, 272-73 (Tex. Crim. App. 2009); *Hall v. State*, 225 S.W.3d 524, 535-36 (Tex. Crim. App. 2007). The first prong of the test requires the court to use the "cognate pleadings" approach to determine whether an offense is a lesser-included offense of another offense. The first prong is satisfied if the indictment for the greater-inclusive offense either: "(1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Ex parte Watson*, 306 S.W.3d at 273.

> Both statutory elements and any descriptive averments alleged in the indictment for the greater-inclusive offense should be compared to the statutory elements of the lesser offense. If a descriptive averment in the indictment for the greater offense is identical to an element of the lesser offense, or if an element of the lesser offense may be deduced from a descriptive averment in the indictment for the greater-inclusive offense, this should be factored into the lesser-included-offense analysis in asking whether all of the elements of the lesser offense are contained within the allegations of the greater offense.

*Id.* This inquiry is a question of law. *Hall*, 225 S.W.3d at 535.

The second prong asks whether there is evidence that supports giving the lesser-included-offense instruction to the jury. *Id.* at 536. A defendant is entitled to a requested instruction on a lesser-included offense when the proof for the charged offense subsumes the proof required to establish the lesser-included offense and some evidence in the record would permit a rational jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Id.* A lesser-included-offense instruction is required when the evidence establishes the lesser-included offense as a valid, rational alternative to the charged offense. *Id.* Moreover, in analyzing the second prong, "[t]he evidence must be evaluated in the context of the entire record." *Moore v. State*, 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).

## B.    Discussion

As noted earlier, there is no evidence to support Simmons's speculation that the cocaine weighed more than four grams because of the packaging. In fact, there is no evidence in the record separately indicating the weight of the packaging. Furthermore, Copeland stated that it was against DPS policy to weigh the packaging with the cocaine and that the cocaine weighed 6.33 grams. Because there is no evidence demonstrating that the cocaine weighed less than four grams and because we have affirmed Simmons's conviction for unlawful possession of a controlled substance more than four grams but less than 200 grams with intent to deliver, we cannot conclude that the trial court erred in denying Simmons's request for an instruction on the lesser-included offense of unlawful possession of a controlled substance over one gram but less than

four grams. *See Ex parte Watson*, 306 S.W.3d at 272-73; *Hall*, 225 S.W.3d at 535-36. Accordingly, Simmons's second issue is overruled.

## V. THE STATE'S CLOSING ARGUMENT

In his fourth issue, Simmons contends that the trial court erred in overruling his objection to the State's closing argument, which allegedly touched on evidence outside the record and insinuated that Simmons had been using children to sell drugs for him. The State counters that its closing argument was a reasonable deduction from the evidence because the prosecutor merely mentioned to the jury that Simmons, a convicted drug dealer, had access to children.

### A. Applicable Law

Proper jury argument must encompass one of the following: (1) a summation of the evidence presented at trial; (2) a reasonable deduction drawn from that evidence; (3) an answer to the opposing counsel's argument; or (4) a plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd); *see Brown*, 270 S.W.3d at 570 (citing *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988)). "It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper." *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973); *see Brown*, 270 S.W.3d at 570.

**B.    Discussion**

Simmons's fourth complaint centers on the following statements made by the prosecutor during closing argument at the punishment phase:

[The State]:    He's around kids.  That's another thing I want to talk to you about.  People may not know him—I mean, and there's very, very good families out there that have bad people, and no one's saying the Henrys are bad people and no one's definitely saying the Simmonses are bad people.  They love their—their—their relatives.  But they can't be held responsible for what their relatives [do].  They're a good family.  But that doesn't change the fact that good families have bad people in them.  And good families do what they can to help.  And that's what they did when they got up on the stand.

But I submit to you that, they presented it as a good thing that he was working with the youth basketball, like that was some kind of benefit to his character that was good.  A drug dealer working around kids is a bad thing no matter what.  We don't know what he was doing with those kids.  He was coaching them.  We don't know that he wasn't getting them to work for him.

[Defense counsel]:    Your Honor, I'm going to object, that's an argument way beyond the evidence.

[The State]:    That's a reasonable deduction from the evidence, Judge.

[THE COURT]:    I'll—I'll overrule the objection.

[The State]:    Thank you, Judge.  We don't know that he wasn't getting those kids out there to work for him.  But he argues like being around kids is a good thing.

During the punishment phase, Simmons called numerous friends and family members to testify that he was a "good guy" and a family man.  Several witnesses

stated that Simmons was an assistant coach for a Little Dribblers basketball team comprised of eleven, twelve, and thirteen-year-old children to show that he is good with children. The prosecutor's statements during closing argument properly summarized and provided an answer to the punishment-phase testimony that Simmons was a "good guy" and a family man who is good with children. *See Brown*, 270 S.W.3d at 570; *see also Guidry*, 9 S.W.3d at 154. Moreover, the jury had already convicted Simmons of unlawful possession of a controlled substance with intent to deliver, and the prosecutor's statements also constituted a reasonable deduction from the evidence—that Simmons has regular contact with children and that those children are at risk in light of Simmons's conviction. *See Brown*, 270 S.W.3d at 570, 572 (citing *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) ("Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith.")). We therefore conclude that the prosecutor's statements fall with the realm of proper jury argument. *See Brown*, 270 S.W.3d at 570; *see also Guidry*, 9 S.W.3d at 154. We overrule Simmons's fourth issue.

## VI. CONCLUSION

Having overruled all of Simmons's issues on appeal, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
 Justice Davis, and
 Justice Scoggins
Affirmed
Opinion delivered and filed May 23, 2012
Do not publish
[CR25]